**Virgil B. VACKAR, Plaintiff,**

v.

**PACKAGE MACHINERY COMPANY, General Mills, Inc., Steve Breton, Defendants.**

No. C 93–1075 FMS.

United States District Court, N.D. California.

Oct. 28, 1993.

Thomas J. Kristof, Auburn, CA, for Vackar.

William F. Campbell, Paul E. Garrison, Steinhart & Falconer, San Francisco, CA, for Package Mach. Co.

Marcia L. Pope, Elena E. Matsis, Fred W. Alvarez, Pillsbury Madison & Sutro, San

Francisco, CA, for General Mills Inc. and Steve Breton.

## ORDER GRANTING SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

### INTRODUCTION

In plaintiff's suit for breach of contract, defamation and negligent investigation, defendants General Mills and Steve Breton have moved for summary judgment on plaintiff's second and third causes of action, for defamation and negligent misrepresentation, respectively.[1] For the reasons discussed herein, the Court finds as a matter of law that the allegedly defamatory statements were within the qualified privilege of California Civil Code section 47(c). The Court, thus, GRANTS the motion of these defendants for summary judgment.

### BACKGROUND

At the time of the events giving rise to this lawsuit plaintiff was employed as an equipment service representative by Eagle Packaging Group ("Eagle"), a division of defendant Package Machinery Company ("Package Machinery"). In his capacity as an equipment service representative, Mr. Vackar was responsible for training the employees of Eagle's customers on the proper use and maintenance of Eagle's equipment. General Mills was one of Eagle's customers.

Mr. Vackar went to General Mills's facility in Covington, Georgia in early December, 1991, to train General Mills's employees in the use of Eagle's equipment. Within a few days of Mr. Vackar's initial training sessions Margaret Quillen, the Personnel Training Manager at General Mills's Covington plant, received complaints from two trainees about Mr. Vackar's conduct during those sessions. In response to these complaints, Ms. Quillen conducted separate interviews over a two day period with eight other employees who had participated in Mr. Vackar's training sessions.

The ten trainees whom Ms. Quillen questioned gave virtually identical reports of Mr. Vackar's conduct during the training sessions. Both women and men reported that Mr. Vackar had made a number of inappropriate comments about women and sex during the training sessions and that such comments had offended them. In particular, the trainees informed Ms. Quillen that Mr. Vackar had engaged in the following conduct during the training sessions:

1. He made comments about his body;

2. He made comments about how much sex he had;

3. He referred to "women on their backs";

4. Responding to a female trainee who was asking a question, he stated that he was "feeling her out" and gestured as though he were feeling her breasts;

5. He remarked that women do not belong in the workplace;

6. He stated that he did not like "girls" working together in teams because they would not be able to do the tasks required.

After having interviewed the ten trainees, Ms. Quillen reported her findings to the Senior Staff Engineer at the time, Steve Breton. Mr. Breton was responsible for ensuring that the employees at the Covington plant received proper and appropriate training in the use of the plant's equipment. He had dealt with Eagle and Package Machinery for several years prior to the incidents that gave rise to the present lawsuit.

Mr. Breton and Ms. Quillen discussed both the substance of the trainees' complaints and the scope of Ms. Quillen's investigation. Given the uniformity of the trainees' reports about Mr. Vackar, Mr. Breton and Ms. Quillen decided that the complaints were credible and that further investigation was unwarranted; rather, the situation required immediate corrective action.

Following his conversation with Ms. Quillen, Mr. Breton telephoned Oren Mosher,

---

1. The Court has already granted summary judgment in favor of Package Machinery, thereby dismissing the first cause of action.

president of Eagle. Ms. Quillen was present during the phone call. Mr. Breton asked that Mr. Vackar not return to the Covington plant, explaining that several trainees had complained about his behavior during the training sessions. He furnished Mr. Mosher with examples of the complaints that Ms. Quillen had received. Later that evening Mr. Breton also telephoned Mr. Vackar to tell him about the complaints that General Mills had received and to ask that he not return to the Covington plant. Mr. Vackar denied the allegations.

Mr. Vackar subsequently brought the present action against Package Machinery, General Mills and Mr. Breton. In his second cause of action Mr. Vackar contends that Mr. Breton's statements to Mr. Mosher were slanderous; in his third cause of action he claims that these statements were the product of a negligent investigation.

## DISCUSSION

Defendants General Mills and Steve Breton have moved for summary judgment on Mr. Breton's second and third causes of action, for defamation and negligent investigation. They claim the protection of California Civil Code section 47(c), which provides a qualified privilege to communications made without malice in the common interest of speaker and listener. *See* Cal.Civ.Code § 47(c) (West Supp.1993). The basis for their assertion of privilege is General Mills's and Eagle's common interest in the behavior of Eagle's employees while conducting training sessions at General Mills.

Plaintiff contests defendants' assertion of privilege, alleging that one of the trainees who reportedly complained about Mr. Vackar's conduct was motivated by ill will. Plaintiff implies that the malice of the trainee should be imputed to Mr. Breton, so as to strip him of the privilege. Alternatively, plaintiff maintains that his evidence raises an inference that Mr. Breton himself acted with malice in making the phone call to Mr. Mosher.

With respect to plaintiff's third cause of action, for negligent investigation, defendants argue that this claim is a restatement of plaintiff's defamation claim and should be treated accordingly. Alternatively, defendants maintain that plaintiff's negligence claim lacks both a legal and a factual basis because, as a matter of law, Mr. Breton's conduct breached no duty that defendants owed to plaintiff. Plaintiff responds that the question of duty cannot be resolved on a motion for summary judgment.

## I. The Summary Judgment Standard

■ In order to withstand a motion for summary judgment the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed.R.Civ.P. 56(e) (West 1992). Those facts must amount to "sufficient evidence favoring the [opposing] party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## II. The Defamation Claim

### A. The Common Interest Privilege of Civil Code section 47(c)

■ Defendants claim that Mr. Breton's allegedly defamatory statements are protected by Civil Code section 47(c), which provides a qualified privilege for communications made without malice in the common interest of speaker and listener. *See* Cal.Civ.Code § 47 (West Supp.1993). That section provides, in pertinent part: "A privileged publication is one made ... (c) [i]n a communication, *without malice,* to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information...." *Id.* (emphasis added). The applicability of the privilege provision is a question of law where, as here, the facts alleged to give rise to the privilege are undisputed. *See Antonovich v. Superior Court,* 234 Cal.App.3d 1041, 285 Cal.Rptr. 863 (1991).

Plaintiff contends that the malice provision of section 47(c) pertains to the original source of the allegedly defamatory communication, not to a speaker who republishes that information. He states: "If the [complaining trainee's] statement was motivated by personal interests, Mr. Breton's state of mind while republishing those statements is irrelevant." Plaintiff's Opposition Memorandum 4:5–8.

Plaintiff cites no authority to support his unique interpretation of section 47, and the Court is aware of none.[2] To the contrary, the cases discussing the malice standard uniformly assume that it is the speaker-republisher's state of mind that is relevant to the determination of privilege. See, e.g., Antonovich v. Superior Court, 234 Cal.App.3d 1041, 285 Cal.Rptr. 863 (1991); Roemer v. Retail Credit Co., 3 Cal.App.3d 368, 83 Cal.Rptr. 540 (1970).

■ It is implicit in the case law definition of malice that it is the speaker's state of mind that matters, not that of his source. Courts have held that the malice required to vitiate the privilege of section 47(c) consists in either the New York Times standard of knowledge of falsity or reckless disregard for truth or the older common law standard of actual ill will. Id. Mere negligence in investigating the truth of the allegedly defamatory statements is insufficient to establish malice. Id.; see also Hoesl v. U.S., 451 F.Supp. 1170 (1978), aff'd 629 F.2d 586 (9th Cir.1980).

Inherent in the concept of reckless disregard for truth is the notion that it is the speaker's belief regarding the accuracy of his statements, rather than the truth of the underlying statements themselves, that is relevant to the malice determination. The recklessness standard would be meaningless if ill will on the part of the original source of the communication automatically defeated the privilege. Rather, such ill will defeats the speaker-republisher's privilege under section 47(c) only if it raises an inference that the speaker acted with reckless disregard, for example by republishing the contents of the communication while entertaining doubts about their accuracy. See Stationers Corp. v. Dun & Bradstreet, Inc., 62 Cal.2d 412, 42 Cal.Rptr. 449, 398 P.2d 785 (1965). Such is not the case here; there is no evidence that Mr. Breton had any reason to suspect improper motivation on the part of the trainee-complainants. On the contrary, the corroboration of the complaints by the eight other trainees whom Ms. Quillen interviewed gave Mr. Breton every reason to regard the complaints as true.

■ In addition to being contrary to the state of the law, plaintiff's proposed standard would eviscerate a republishing speaker's privilege under section 47 to make statements in furtherance of a common interest. Such a result would effectively disable supervisors in all cases from acting on the apparently credible complaints of their employees and, therefore, runs afoul of public policy.[3]

## B. Applicability of the Privilege to Steve Breton

Based on the above discussion, Mr. Breton's statements to Mr. Mosher were privileged under section 47(c) unless they were either made in reckless disregard of the truth or motivated by an improper purpose. Plaintiff has adduced no evidence to support either of these theories.

2. Plaintiff cites Witkin on Torts in support of his argument that it is the state of mind of the original declarant, and not that of Mr. Breton, that the Court must assess in deciding the question of malice. See Plaintiff's Opposition Memorandum 4:4–8. Plaintiff's invocation of this treatise is unavailing, as the sections to which he cites deal with the issues of republication and good faith as defenses, not with the question of privilege and malice.

3. The Court's conclusion is bolstered by the fact that California courts have held that even a finding of ill will on the part of a speaker does not defeat the privilege of section 47(c) if the communication was nonetheless made for a proper purpose. See Stockton Newspapers v. Superior Court, 206 Cal.App.3d 966, 979 n. 3, 254 Cal. Rptr. 389 (1988), disapproved on other grounds in Brown v. Kelly Broadcasting Co., 48 Cal.3d 711, 733 n. 18, 257 Cal.Rptr. 708, 771 P.2d 406, and cases cited therein. It follows a fortiori that ill will on the part of a source does not vitiate the privilege for a common interest communication claimed by a republisher who acts to further a proper purpose.

■ Plaintiff argues that an inference of malice is raised by Mr. Breton's failure to investigate more thoroughly "to confirm what he had been told by Ms. Quillen." Plaintiff's Opposition Memorandum 5:14–15. Plaintiff also intimates that the reason for Mr. Breton's prompt response to his employees' complaints, and for his failure to investigate further, was his fear of liability for sexual harassment.

Neither of these claims can defeat summary judgment. By the time Mr. Breton met with Ms. Quillen to discuss the complaints against Mr. Vackar, Ms. Quillen had already conducted a thorough investigation of the situation by separately interviewing ten of the employees whom Mr. Vackar had trained. Given the uniformity of the employees' reports, Mr. Breton's reliance upon their accuracy cannot be deemed reckless. He was under no obligation to confirm the reports for himself or to investigate further before relating what he had learned to Mr. Mosher.

■ Moreover, Mr. Breton's communication to Mr. Mosher was motivated by a proper purpose, namely, his interest in keeping General Mills's workplace free of harassing conduct. *See Garziano v. E.I. Du Pont de Nemours & Co.*, 818 F.2d 380 (5th Cir.1987). Even if his prompt reaction to the reports was motivated in part by a fear of liability, this purpose is not improper and does not preclude application of the privilege. Avoidance of liability for sexual harassment is a legitimate business interest.

### III. The Negligent Investigation Claim

■ In his third cause of action plaintiff reiterates the allegations set forth in support of his defamation cause of action and claims that these facts support a finding of negligent investigation.[4] Summary judgment is appropriate on this claim for two reasons. First, because the allegations of negligence are embraced by plaintiff's defamation claim, the privilege provisions of section 47(c) preclude a finding of liability. *See Stationers Corp. v. Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 42 Cal.Rptr. 449, 398 P.2d 785 (1965). Alternatively, California courts have held that plaintiffs may not avoid the strictures of defamation law by artfully pleading their defamation claims to sound in other areas of tort law. *See Felton v. Schaeffer*, 229 Cal.App.3d 229, 279 Cal.Rptr. 713 (1991), and cases cited therein. Allowing plaintiffs to sue in negligence where their underlying claims sound in defamation would invite disingenuous attempts to evade the strictures of defamation law by pleading, for example, that the alleged defamer was negligent in investigating the truth of his statements or in republishing them.[5] *Id.* at 239, 279 Cal.Rptr. 713.

### IV. Plaintiff's Objections to Evidence

Plaintiff has objected to the evidence offered by defendants in support of their motion. His objections fall into two categories. First, plaintiff argues that defendants' motion relies on hearsay evidence both because defendants have failed to produce declarations of the individual trainees on whose reports Ms. Quillen and Mr. Breton relied and because Mr. Breton relied on the report of Ms. Quillen. Plaintiff's second class of objections pertains to references in defendants' declarations to General Mills's policy on sexual harassment. Plaintiff contends that such references must be supported by an actual copy of the policy.

■ Plaintiff's hearsay objections are overruled because the statements referred to constitute nonhearsay. *See* Fed.R.Evid. 801(c) (West 1984). The statements of the trainees are offered not as substantive proof that Mr. Vackar offended or harassed the

---

4. In paragraph 26 of his complaint, plaintiff states that "General Mills [and] Steven Breton ... negligently investigated allegations made regarding plaintiff's conduct and represented to plaintiff's employer that plaintiff's performance was unacceptable. Defendants [sic] representations were made without reasonable grounds for believing them to be true and with the intent that plaintiff's employer rely on the representations." Compl. ¶ 26.

5. Because the Court holds that plaintiff's third cause of action is precluded both by the privilege provisions of Civil Code section 47(c) and by his defamation cause of action, it is unnecessary to reach defendants' additional claim that, as a matter of law, defendants owed no duty to plaintiff to investigate fairly the complaints made against plaintiff before acting upon them.

General Mills trainees but rather as evidence of Mr. Breton's state of mind when he made the allegedly defamatory comments to Mr. Mosher. In particular, the statements indicate that, at the time that Mr. Breton telephoned Mr. Mosher, Mr. Breton was aware of the employees' complaints and understood that Ms. Quillen had conducted an investigation that tended to corroborate the complaints. As discussed above, Mr. Breton's state of mind is critical to the determination of privilege under Civil Code section 47(c). His understanding that trainees had complained to Ms. Quillen about Mr. Vackar is relevant to an assessment of whether he acted with malice, or recklessly, in repeating to Mr. Mosher the allegations against Mr. Vackar.

The Court need not address the plaintiff's second set of objections because the Court has not relied on the existence of such a policy in reaching its judgment.[6]

## V. Personal Jurisdiction

Mr. Breton earlier brought a motion to dismiss for lack of personal jurisdiction. On June 16, 1993, this Court issued an order requesting further briefing on that issue. Subsequently, in a status conference held on July 23, 1993, the Court ordered discovery on the issue of personal jurisdiction stayed pending the resolution of this summary judgment motion. Because the Court grants defendants' motion for summary judgment, the issue of personal jurisdiction over Mr. Breton is moot.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the motion of defendants General Mills and Steve Breton for summary judgment. Judgment for all defendants shall be entered, and the Clerk of the Court shall close the file.

SO ORDERED.

---

[6]. Additionally, defendants have cured the objection by submitting a copy of General Mills's company practices guidelines, including its policy on sexual harassment, attached as Exhibit A to the Second Declaration of Elena E. Matsis in Support of Defendant General Mills, Inc.'s and Steve Breton's Motion for Summary Judgment.