[No. D040367. Fourth Dist., Div. One. Dec. 5, 2003.]

BRANDON J. NOEL, Plaintiff and Appellant, v.
RIVER HILLS WILSONS, INC., et al., Defendants and Respondents.

**COUNSEL**

Law Office of David A. Miller and David A. Miller for Plaintiff and Appellant.

Littler Mendelson and Michelle S. Park for Defendants and Respondents.

**OPINION**

**MCCONNELL, P. J.**—In this defamation action, plaintiff Brandon J. Noel appeals a summary judgment in favor of defendants River Hills Wilsons, Inc. (Wilsons) and its employee Shelly Santillan. Noel contends the conditional common-interest privilege of Civil Code[1] section 47, subdivision (c), amended in 1994 to be expressly made applicable to defamatory statements made without malice by a current or former employer to a prospective employer, did not arise because in making the statements, Santillan acted with malice. Alternatively, Noel contends the privilege did not arise because the statements were not "based on credible evidence," as that phrase is used in the amended statute.

We conclude the defendants proved the defamatory statements were made on a privileged occasion, and Noel presented no evidence from which a

---

[1] Statutory references are to the Civil Code except when otherwise specified.

reasonable jury could infer malice. Further, as a matter of apparent first impression, we hold that in including the "based on credible evidence" language in the 1994 amendment to section 47, subdivision (c), the Legislature did not intend to make the common-interest privilege inapplicable in the employment reference context on a showing of the defendant's mere negligence. The trial court ruled correctly, and accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2000 Noel filled out a background questionnaire for a position with GTE, for whom he had recently begun working on a contingent basis. The questionnaire required full disclosure of any criminal convictions. In response, Noel wrote that in 1994 he was convicted of a felony he described as "aiding and abeting [sic]/not fully involved," and he received "parole/probation to youth authority."

GTE retained ChoicePoint to conduct a background investigation of Noel. ChoicePoint contacted Noel's former employers, including Wilsons, where he worked for approximately two months in 1999. Santillan, a Wilsons manager, advised ChoicePoint that Noel left its employ because of "loss prevention issues," and his "rehire status" was "unfavorable." It is undisputed that Noel actually had no "loss prevention issues" with Wilsons, and that Santillan mistakenly gave this information to ChoicePoint.

ChoicePoint included Santillan's information in an April 13, 2000, report to GTE. ChoicePoint also provided GTE with an April 25 addendum report regarding its criminal records search on Noel. The report revealed that in February 1995 Noel was convicted of carjacking, three counts of attempted robbery, two counts of exhibiting a weapon other than a firearm, two counts of residential burglary and four counts of robbery.[2] The addendum stated Noel was sentenced to the California Youth Authority (CYA), and was released on parole in March 1999.[3] After receiving the addendum report, GTE notified Noel in writing that his employment was terminated.[4] GTE provided Noel with copies of ChoicePoint's reports.

---

[2] In interrogatory responses, Noel admitted he was convicted of one count of carjacking, two counts of residential burglary, four counts of robbery, three counts of attempted robbery, and one count of exhibiting a deadly weapon other than a firearm.

[3] In deposition, Noel testified he was incarcerated between October 1994 and March 1999, and he was transferred from the CYA to state prison in early 1997 when he turned 19 years of age.

[4] GTE's termination letter is dated April 21, 2000. However, its author, Patricia Eller, testified that date was incorrect, and the letter was not written until after she received ChoicePoint's April 25 addendum report.

Noel sued Wilsons and Santillan for defamation and numerous other counts, based on Santillan's comments to ChoicePoint.[5] Noel alleged that Santillan's comments caused the loss of his position with GTE and emotional distress. He sought compensatory and punitive damages.

The defendants moved for summary judgment, arguing Santillan's comments to ChoicePoint were privileged under the conditional common-interest privilege of section 47, subdivision (c), because she was responding to an inquiry by a potential employer and did not act with malice. In support of the motion, the defendants relied on Santillan's deposition testimony that about 30 minutes before ChoicePoint telephoned her, she received a telephone call from the manager of another Wilsons store, informing her she would be receiving an employment reference check for another former employee, an A. T., who Wilsons fired because of "loss prevention issues." Santillan explained that because she was waiting for that call, she mistakenly believed ChoicePoint was requesting employment information on A. T. instead of Noel.

The defendants also relied on Noel's deposition testimony that he did not have a bad relationship with anyone at Wilsons, and when he contacted Santillan after receiving a copy of ChoicePoint's April 21, 2000, report, she apologized for mistakenly giving out inaccurate information about him. Noel believed Santillan was sincere. He also testified she immediately offered him a job at Wilsons, which he accepted, but then later rejected. Santillan testified she offered Noel a job "[b]ecause I wanted to do anything I could to help him."

Additionally, the defendants argued that even if the common-interest privilege were inapplicable, the erroneous information Santillan gave Choice-Point caused him no damage. The defendants relied on the deposition testimony of Patricia Eller, the GTE employee who terminated Noel's employment, that he was disqualified because he falsified his criminal history on the background questionnaire, and Santillan's comments did not influence the decision.[6]

The court granted the defendants' motion on the ground of the common-interest privilege. Judgment was entered on April 12, 2002.

---

[5] In addition to defamation, the complaint included causes of action for negligence, negligent supervision and training, intentional and negligent infliction of emotional distress, violation of Labor Code section 1050 and violation of Civil Code section 43.

[6] In the factual statement of his appellate brief, Noel asserts his termination from GTE was not based on the falsification of his criminal history, but on Santillan's comments to ChoicePoint. However, he cites no competent evidence in support.

## DISCUSSION

## I

### Standard of Review

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant satisfies this burden by showing " 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*)

"De novo review is used to determine whether, as a matter of law, summary judgment was appropriately granted. [Citation.] De novo review is [also used] to determine the soundness of a trial court's resolution of the meaning of a statute, as entailing a pure question of law." (*Camarillo v. Vaage* (2003) 105 Cal.App.4th 552, 560 [130 Cal.Rptr.2d 26].)

## II

### Conditional Common-Interest Privilege

### A

■  Defamation is effected either by libel or slander (§ 44), each of which is defined as a false and *unprivileged* publication (§§ 45, 46). Slander, with which we are concerned here, is defined as an oral communication that "[t]ends directly to injure [a person] in respect to his [or her] office, profession, trade or business . . . ." (§ 46.)

■  Section 47, subdivision (c), whose predecessor was enacted in 1872, extends a conditional privilege against defamatory statements made without malice on subjects of mutual interest. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1205 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)[7] "[I]f malice is shown, the privilege is not merely overcome; it never arises in the first instance." (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 723, fn. 7 [257 Cal.Rptr. 708, 771 P.2d 406].) "It is *the occasion* giving rise to the publication that is

---

[7] Section 47 provides in part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

conditionally privileged, i.e., under specified conditions the occasion gives rise to a privilege. If the privilege arises, it is a complete defense." (*Ibid.*)

In enacting section 47, subdivision (c), "the Legislature intended to codify without change the common law common-interest privilege. At common law, that privilege embodied a two-step analysis, under which the defendant bore the initial burden of demonstrating that the allegedly defamatory communication was made upon a privileged occasion, and the plaintiff then bore the burden of proving that defendant had made the statement with malice." (*Lundquist v. Reusser, supra,* 7 Cal.4th at p. 1208 [discussing § 47, subd. 3, the predecessor of § 47, subd. (c)].)

■ Courts have consistently interpreted section 47, subdivision (c) to apply in the employment context. (See *Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 995 [225 Cal.Rptr. 852].) In *Manguso v. Oceanside Unified School Dist.* (1984) 153 Cal.App.3d 574 [200 Cal.Rptr. 535], this court held the common-interest privilege applied to uncomplimentary statements the plaintiff's former employer made to prospective employers. We explained that "[b]ecause the letter containing the alleged defamation was written by an educator, regarding qualifications of a particular teacher and directed to those prospective employers of that teacher, it is subject to a qualified privilege." (*Id.* at p. 580; see also *Neal v. Gatlin* (1973) 35 Cal.App.3d 871, 877 [111 Cal.Rptr. 117] ["It is well established that a former employer may properly respond to an inquiry from a potential employer concerning an individual's fitness for employment, and if it is not done maliciously, such response is privileged."]; accord, *Lesperance v. North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 341 [31 Cal.Rptr. 873].)

■ In 1994 the Legislature amended section 47, subdivision (c) to expressly state the common-interest privilege applies to communications made by current or former employers to prospective employers. (§ 47, subd. (c), as amended by Stats. 1994, ch. 364, § 1 (Assem. Bill No. 2778).) The statute currently reads in pertinent part: "This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant." (§ 47, subd. (c).)

The sponsor of Assembly Bill No. 2778 was the Los Angeles Unified School District Personnel Commission (the Commission), which reported "that former employers are loathe to comment on the fitness of prospective school employees because of the fear of legal retribution." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2778 (1993–1994 Reg. Sess.) as

amended May 18, 1994, p. 2.) The Commission advised "that it must hire numerous persons to fill very sensitive positions involving close contact with young children," and it "is critical that former employers be able to respond candidly about former employees" applying for such positions. (*Id.* at p. 3.) According to the Commission, in the 1992–1993 school year, it dismissed 124 classified employees for cause, and "if 'references had been received, many of these persons might never have been hired.' " (*Ibid.*) The Legislature was aware that courts had interpreted the common-interest privilege to apply in the employment reference context, but it sought to "afford employers the certainty of statute, rather than the uncertainty of case law." (*Id.* at p. 4.)

### B

Noel contends summary judgment was improper because he raised triable issues of fact regarding whether Santillan acted with malice when she gave ChoicePoint erroneous information on his employment. We find the contention without merit.

Insofar as the common-interest privilege is concerned, malice is not inferred from the communication itself. (§ 48.) " 'The malice necessary to defeat a qualified privilege is "actual malice" which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights (citations).' [Citations.]" (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413 [134 Cal.Rptr. 402, 556 P.2d 764], citing *Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 936 [119 Cal.Rptr. 82]; *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 944 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944] ["The malice referred to by the statute is actual malice or malice in fact, that is, a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person."]; *Lundquist v. Reusser, supra,* 7 Cal.4th at pp. 1204, 1213; *Brown v. Kelly Broadcasting Co., supra,* 48 Cal.3d at p. 723; BAJI Nos. 7.05, 7.05.1 [defendant abuses conditional privilege by publishing defamatory statement without good faith belief in its truth or without reasonable grounds for believing its truth, or when he or she is motivated by hatred or ill will toward plaintiff].)

However, "[l]ack of reasonable or probable cause . . . is not . . . a simple negligence concept. . . . [M]alice focuses upon the defendant's state of mind, not his [or her] conduct. Mere negligence in inquiry cannot constitute lack of reasonable or probable cause." (*Rollenhagen v. City of Orange* (1981) 116 Cal.App.3d 414, 423 [172 Cal.Rptr. 49], disapproved on another ground in

*Brown v. Kelly Broadcasting Co., supra,* 48 Cal.3d at p. 738.) "While '[t]he concept of negligence is inherent in the issue of probable cause' [citation], . . . [¶] . . . mere negligence . . . in the sense of oversight or unintentional error, is not alone enough to constitute malice. It is only when the negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a wilful disregard for or avoidance of accuracy, that malice is shown." (*Roemer v. Retail Credit Co.* (1970) 3 Cal.App.3d 368, 371–372 [83 Cal.Rptr. 540]; see also *Bierbower v. FHP, Inc.* (1999) 70 Cal.App.4th 1, 9 [82 Cal.Rptr.2d 393] ["[m]alice entails more than sloppiness"]; *Davis v. Hearst* (1911) 160 Cal. 143, 167 [116 P. 530] [" 'Mere inadvertence or forgetfulness, or careless blundering, is no evidence of malice.' "]; *Vackar v. Package Machinery Company* (N.D. Cal. 1993) 841 F.Supp. 310, 314 [mere negligence does not constitute malice within meaning of section 47, subd. (c)]; *Hoesl v. United States* (N.D. Cal. 1978) 451 F.Supp. 1170, 1180 ["simple negligence does not satisfy the scienter requirement of the qualified privilege in the law of defamation"].)

■ We conclude no reasonable jury could find malice was a motivating cause of Santillan's statements. Rather, the undisputed evidence shows she made an unintentional error, or careless blunder, by paying insufficient attention to ChoicePoint's inquiry. Santillan gave inaccurate employment information on Noel because she was expecting an inquiry from a prospective employer on another former employee of Wilsons. In his responsive separate statement, Noel conceded that Santillan "had sincerely made [a] . . . mistake in providing the incorrect employment reference to GTE." Contrary to Noel's position now, Santillan did not doubt the truth of the information she conveyed, or show a reckless disregard for his rights or feelings. "Inherent in the concept of reckless disregard for truth is the notion that it is the speaker's belief regarding the accuracy of his [or her] statements, rather than the truth of the underlying statements themselves, that is relevant to the malice determination." (*Vackar v. Package Machinery Company, supra,* 841 F.Supp. at p. 314.) Noel ignores Santillan's belief and relies exclusively on the falsity of her statements. " 'That the statement is now . . . proved to be untrue is no evidence that it was made maliciously.' " (*Davis v. Hearst, supra,* 160 Cal. at p. 167.)

Noel cites the following from Witkin on Torts in support of his assertion Santillan's innocence or good faith is immaterial: "[I]nnocence or good faith of the defendant *who makes a defamatory statement* is not a defense, although it may be shown in mitigation of damages. . . . Thus, where he or his employees through an honest and reasonable mistake defame the *wrong person,* he is liable." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 554, p. 651.) However, this section of Witkin does not concern the conditional common-interest privilege of section 47, subdivision (c). Moreover, Witkin explained "[t]his rule is, however, subject to the *New York Times v.*

*Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710] requirement of proof of actual malice where the defamatory statement is directed at public officials or public figures . . . , and to the *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997] requirement of negligence where it is directed at a private individual." (5 Witkin, *supra,* Torts, § 554, p. 651.)[8] Accordingly, when a conditional privilege applies, as here, malice must be shown. (*Brown v. Kelly Broadcasting Co., supra,* 48 Cal.3d at pp. 740–742 [malice standard, not negligence standard, governs in determining whether section 47, subd. (c) applies].)

Noel's reliance on *Kerby v. Hal Roach Studios* (1942) 53 Cal.App.2d 207 [127 P.2d 577], is also misplaced. There, the court stated, in dictum, "that inadvertence or mistake affords no defense to a charge of libel, where the defamatory publication does, in fact, refer to the plaintiff." (*Id.* at p. 213.) The case, however, does not concern the common-interest privilege of section 47, subdivision (c). " 'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

Additionally, Noel cites *Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 370 [76 Cal.Rptr.2d 670], for the proposition that whether the defendant acted with malice is for the trier of fact, and thus summary judgment is unavailable when a conditional privilege is at issue. The court there, however, merely concluded that in response to the defendant's motion for summary judgment, the plaintiff raised a triable issue of fact as to whether the defendant made the publication maliciously. (*Id.* at p. 370.) In contrast, Noel raised no facts from which Santillan's malice could reasonably be inferred. The applicability of the common-interest privilege provision is a question of law where, as here, the facts alleged to give rise to the privilege are undisputed. (*Vackar v. Package Machinery Company, supra,* 841 F.Supp. at p. 313.)

Section 47, subdivision (c) is applicable, and thus the defendants were entitled to summary judgment on the defamation cause of action, and on all

---

[8] In *New York Times v. Sullivan, supra,* 376 U.S. at pages 279–280, 283, the United States Supreme Court held that "constitutional guarantees [of the First and Fourteenth Amendments to the United States Constitution] require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." The court also held that negligence in failing to discover published misstatements was constitutionally insufficient to show the recklessness required for a finding of malice. (*Id.* at p. 288.)

In *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at page 347, the court held that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."

other tort claims since they also stemmed from Santillan's comments. "California courts have held that plaintiffs may not avoid the strictures of defamation law by artfully pleading their defamation claims to sound in other areas of tort law." (*Vackar v. Package Machinery Company, supra,* 841 F.Supp. at p. 315; *Felton v. Schaeffer* (1991) 229 Cal.App.3d 229, 239 [279 Cal.Rptr. 713]; *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 579 [131 Cal.Rptr. 592].)

## C

Alternatively, Noel contends Santillan's lack of malice is immaterial because her false statements were not based on credible evidence. Again, in 1994 the Legislature amended section 47, subdivision (c) to expressly apply to statements current or former employers make to prospective employers when the statements are "based on credible evidence, made without malice." (§ 47, subd. (c).)

The issue is one of statutory interpretation. " 'When interpreting a statute, we must ascertain legislative intent so as to effectuate the purpose of a particular law. Of course our first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citation.] When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history. [Citation.] But language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance. [Citation.] [¶] . . . Statutory language [that] seems clear when considered in isolation may in fact be ambiguous or uncertain when considered in context. [Citation.]' [Citation.]" (*National Technical Systems v. Commerical Contractors, Inc.* (2001) 89 Cal.App.4th 1000, 1007–1008 [108 Cal.Rptr.2d 67].)

Here, we consider the legislative history of the 1994 amendment to section 47, subdivision (c). Standing alone, the phrase "based on credible evidence" connotes a negligence standard, and thus it is latently ambiguous given the Legislature's intent to foster communication between current or former employers and prospective employers, and the well-established rule that mere negligence does not constitute malice within the meaning of the statute.[9]

By amending section 47, subdivision (c) the Legislature foreclosed any argument the common-interest privilege is inapplicable in the employment

---

[9] We asked the parties for supplemental briefing on the "based on credible evidence" language of section 47, subdivision (c), and we have taken their responses into consideration.

reference context, and sought to encourage current or former employers to respond, or more fully respond, to inquiries of prospective employers regarding applicants' job qualifications. "The legislative history of the 1994 amendments clarified that their major purpose was to encourage a freer flow of reference information." (Saxton, *Employment References in California After Randi W. v. Muroc Joint Unified School District: A Proposal for Legislation To Promote Responsible Employment Reference Practices* (1997) 18 Berkeley J.Emp. & Lab.L. 240, 245, fn. 10; *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1080 [60 Cal.Rptr.2d 263, 929 P.2d 582] (*Randi W.*)[10] ["existence of this privilege may encourage more open disclosure of relevant information regarding former employees"].)

The express extension of a conditional privilege to employment references serves an important purpose. "To the extent that no comment and 'name, rank and serial number' policies protect employers, the protection comes at the expense of communication in the job market. Employers' silence policies arrest the flow of positive information as well as negative information that most typically creates the risk of being sued. The consequences of employer silence affect the employers who seek references as well as job seekers who would benefit from receiving positive references." (Cooper, *Job Reference Immunity Statutes: Prevalent But Irrelevant* (2001) 11 Cornell J.L. & Pub. Policy 1, 10; see also comment, *"To Tell the Truth, the Whole Truth, and Nothing but the Truth:" Employment References and Tort Liability* (2002) 33 U. Tol. L.Rev. 847, 864–865 [" 'no comment' policies are detrimental to society as a whole"].)

The original version of Assembly Bill No. 2778 did not contain the "based on credible evidence" phrase. Rather, the bill was amended to add the phrase in response to opposition by the California Trial Lawyers Association's (the Association). The legislative history explains that "[b]y requiring that the communication be 'based upon credible evidence,' the bill . . . will not immunize communications to a prospective employer that are *based upon mere rumor.*" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2778 (1993–1994 Reg. Sess.) as amended May 18, 1994, p. 3, italics added.)

Presumably, the Association was troubled by cases such as *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 797 [197 P.2d 713], in which the court explained that "[a]lthough *there are situations where protection of the interest involved may make it reasonable to report rumors* or statements

---

[10] In *Randi W. supra,* 14 Cal.4th at p. 1070, the court held "defendants' letters of recommendation, containing unreserved and unconditional praise for [a] former employee . . . despite defendants' alleged knowledge of complaints or charges of his sexual misconduct with students, constituted misleading statements that could form the basis for tort liability for fraud or negligent misrepresentation."

that the publisher may even know are false [citations], ordinarily the [common-interest] privilege is lost if defendant has no reasonable grounds for believing his statements to be true." (Italics added; see also *Institute of Athletic Motivation v. University of Illinois* (1980) 114 Cal.App.3d 1, 12 [170 Cal.Rptr. 411].) Further, Witkin states the publication of rumors is ordinarily not privileged, but "where an inquiry is made as to an employee, or an employee reports to his employer about another employee, the relationship may warrant the communication of a rumor." (5 Witkin, *supra*, Torts, § 527, p. 617, citing Rest.2d, Torts § 602.)

If the "based on credible evidence" phrase of section 47, subdivision (c) is interpreted to impose a mere negligence standard in the employment reference context, the statute would afford current or former employers less protection than they had under case law predating the 1994 amendment, and the flow of information would be impeded. Indeed, because false statements are, by definition, commonly based on a lack of credible evidence, the interpretation Noel urges could essentially abrogate the common-interest privilege insofar as employment references are concerned. Since the Legislature sought to foster the exchange of employment information, we impute no such intent to it.

■ Rather, we conclude that by adding the "based upon credible evidence" language to section 47, subdivision (c), the Legislature, out of an abundance of caution, intended to bar any argument that in the employment reference context, the protection of the interest involved may make it reasonable to report mere rumors or unfounded gossip. In other words, the Legislature clarified that if a current or former employer's publication was based on mere rumor, the privilege is lost because he or she lacked reasonable grounds for believing the truth of the publication. Although negligence is relevant in determining probable cause, "mere negligence . . . in the sense of oversight or unintentional error, is not alone enough to constitute malice." (*Roemer v. Retail Credit Co., supra,* 3 Cal.App.3d at p. 372.) Santillan reported no rumors or gossip regarding Noel's employment; she had no improper purpose and her statements were caused by a careless blunder. Accordingly, summary judgment for the defendants on all causes of action was proper.

## DISPOSITION

The judgment is affirmed. The defendants are awarded costs on appeal.

Benke, J., and Haller, J., concurred.