Filed 4/30/13  Foley v. One Harbor Drive Homeowners Assn. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANNE MARIE FOLEY, | D060174 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00088787-CU-WT-CTL) |
| ONE HARBOR DRIVE HOMEOWNERS ASSOCIATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Steven R. Denton, Judge.  Affirmed.

In this defamation and wrongful termination action, plaintiff Anne Marie Foley appeals from the grant of summary judgment in favor of the defendants, who are (1) her former employer, defendant One Harbor Drive Homeowners Association (Association); and (2) David Grimes, Donald Messmer, and Ray Stewart (collectively the individual defendants), all of whom were Association homeowners, and two of whom (Grimes and

Messmer) were members of the Association's Board of Directors (the Board) when this action arose. This action arose when Grimes allegedly made slanderous statements about Foley and her compensation at the Association's April 2009 annual homeowners meeting, Foley thereafter complained through her attorney, and the Association later terminated her employment based on proffered budgetary reasons after the individual defendants allegedly made additional defamatory statements about her.

In her complaint Foley asserted causes of action for slander per se against all of the individual defendants and for libel against Stewart, as well as claims against the Association for wrongful termination in violation of public policy, breach of the implied covenant of good faith and fair dealing, and breach of an implied contract not to terminate her employment except for good cause.

Foley contends the court erred in granting summary judgment because (1) with respect to her slander per se and libel claims, the individual defendants' statements are provably false and issues of material fact exist as to malice; (2) with respect to her claim for wrongful termination in violation of public policy, issues of material fact exist as to whether retaliation was the true reason for her termination, and thus as to whether the Association's proffered budgetary reason was a mere pretext; and (3) with respect to her claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing, which are based upon the same factual allegations, ample evidence establishes an implied contract, and issues of material fact exist as to whether the Association acted in bad faith by retaliating against her. For reasons we shall discuss, we affirm the judgment.

2

FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *The Complaint's Causes of Action and Factual Allegations*

As pertinent here, Foley's complaint asserted five causes of action:[2] (1) slander per se (first cause of action), alleged against all three of the individual defendants; (2) libel (second cause of action), alleged against Stewart only; (3) wrongful termination in violation of public policy (third cause of action), alleged against the Association based on Labor Code section 6310, which prohibits employers from retaliating against employees who complain about unsafe or unhealthy working conditions; (4) breach of the implied covenant of good faith and fair dealing (fourth cause of action), alleged against the Association; and (5) breach of an implied contract not to terminate her employment except for good cause (fifth cause of action), also alleged against the Association.

In support of these claims, Foley's complaint alleged she had worked for the Association as director of concierge services and special events for nearly 15 years, she had competently performed her duties in a diligent and professional manner, and she had received annual bonuses and raises with the exception of one year. She alleged that Grimes, a member of the Board and homeowner who was concerned he would lose at the upcoming Board election, "verbally attacked" and slandered her at the April 2009 annual meeting of the Association's members by falsely stating to other homeowners and others

---

[1] The parties provide cursory and incomplete summaries of the complicated procedural background in this case.

[2] Foley dismissed with prejudice a sixth cause of action for violation of Labor Code section 201.

3

that she was overpaid and that the reason she did not leave was that she could not find a job elsewhere. Foley also alleged Grimes made additional slanderous comments at other Association meetings that injured her in her occupation, by falsely stating that she was earning a base annual salary of $96,000 when she was earning significantly less than that amount and that she had received a 10 percent bonus, and that Grimes made these false statements to cause homeowners and others to wrongly believe she was overpaid and to demand her resignation.

Foley's complaint also alleged that Messmer and Stewart made slanderous comments about her by repeating Grimes's false comments and that Stewart also falsely stated she was overpaid, she did not work six weeks a year, and she did not have the necessary skills to do her job.

Foley also alleged she met with Raj D'Souza, the Association's general manager, after the Association's April 2009 annual meeting, and D'Souza represented to her that her job was safe and she was not going to be fired. She also alleged that to restore her good reputation, she retained counsel, who sent a written complaint to the Board about Grimes's "wrongful conduct", Grimes and "others" at the Association thereafter embarked on a retaliation campaign against her for complaining about Grimes's "slanderous remarks", and Grimes said to at least one other person that Foley "had another thing [*sic*] coming" if she thought she could sue Grimes or the Association or otherwise hold him accountable for his conduct.

Foley alleged that General Manager D'Souza was instructed to make working conditions unpleasant for her in an effort to get her to resign. She further alleged that

4

"[d]efendants, through their conduct and defamatory statements, created an unsafe and unhealthy working environment for [her]," and the Association terminated her employment "in retaliation for her complaints about the unsafe and unhealthy working conditions" in violation of Labor Code section 6310.

The complaint also alleged that Grimes and the Board terminated Foley's employment without cause on September 25, 2009, during an executive Board session organized by Grimes, "in retaliation for [her] complaints about Defendants' prior wrongdoing." It further alleged her employment "was purportedly terminated because the [Association] wanted to eliminate her position and save money under the revised 2010 budget," but her position was "not eliminated as a cost saving measure and all her job duties [were] currently being performed" by Michael Cockerham, who previously was the Association's doorman. Messmer also voted to terminate Foley's employment, but two other Board members voted against terminating her employment. In addition, the complaint alleged that according to the bylaws, all discussions regarding budgetary issues must be open to the homeowners, and the decision to terminate Foley's employment "could not have been for budget related issues only" because the Board's executive session was not open to all homeowners.

Foley alleged that after she was fired, Stewart sent to other homeowners a letter in which he stated that Foley's position "required duties and talents beyond those that our previous concierge [Foley] demonstrated" and that Stewart repeated these same comments to homeowners. These written statements, "led others to believe [she] did not

have the job skills necessary to perform her job and that she had been terminated for cause."

Foley also alleged that after she was fired, Messmer "made comments to other homeowners that there were reasons he could not discuss as to why [her] employment was terminated, thus leading others to believe [she] was terminated for cause," when in fact she had not been terminated for cause. She further alleged that during her 15-year tenure with the Association, she "performed her job duties in a highly competent and professional manner and received commendations and raises"; the Association "never once in 15 years gave [her] a negative verbal or written performance review," and no one, other than the individual defendants beginning in April 2009, "ever said anything to the effect that she was performing her job duties in any manner other than competently, diligently, and professionally."

Foley further alleged that the reason given for her termination—to save money—was false and pretextual because (1) the Association "did not eliminate [her] position, but instead simply had Cockerham assume [her] responsibilities"; (2) "had the real reason been budgetary, the meeting at which [her] employment was terminated should have been open to all homeowners, but was not"; and (3) the Association "gave Cockerham a raise, thus refuting any claim that Foley was fired to save money."

B. *Defendants' Summary Judgment/Summary Adjudication Motion*

In support of their joint motion for summary judgment or, alternatively, for summary adjudication, defendants claimed that all five causes of action alleged in the Foley 's complaint fail as a matter of law for the following reasons:

6

1. *First and second causes of action*:  *Slander and libel* (*respectively*)

With respect to the first and second defamation causes of action, the individual defendants argued that (1) the alleged defamatory statements were privileged under Civil Code section 47 because they were made by homeowners to other homeowners who shared a common interest in the information and the Board's budget decisions; and (2) "these very same characterizations of job skills and job performance are exactly the types of communications protected by the court in *Jensen v. Hewlett-Packard* [*Co.* (1993) 14 Cal.App.4th 958]."

2. *Third cause of action*:  *Wrongful termination in violation of public policy*

With respect to the third cause of action for wrongful termination in violation of public policy based on Labor Code section 6310, and citing this court's decision in *Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431 (*Muller*), the Association argued the alleged defamatory statements "[did] not constitute unsafe working conditions or workplace safety issues," and thus the statute "provides no public policy protection."  Furthermore, the Association argued, Foley's deposition testimony shows that the only basis upon which she believed the Association retaliated against her was that Grimes was upset about the letter her attorney sent to the Association; the undisputed facts show that any alleged comments Grimes made about the letter were "wholly unrelated to the Board's decision to eliminate two positions due to budgetary constraints"; D'Souza's deposition testimony shows he had discussed eliminating Foley's position a year before the Board's September 24, 2009 meeting as part of previous budget discussions; and, thus, "since such budget discussions took place long before Mr. Grimes'

7

alleged comments about the letter from Foley's counsel sent on April 23, 2009, clearly Foley has failed to establish any relationship to her termination."

3. *Fifth cause of action*:  *Breach of implied contract*

The Association next argued, with respect to the fifth cause of action for breach of an implied contract not to terminate Foley's employment except for good cause, that even if such an implied contract were assumed to exist, "Foley ha[d] no evidence to establish her ultimate burden of proof that her termination of employment was in fact wrongful" because the Association "ha[d] articulated a valid, good cause reason for Foley's termination," and "[t]he termination of employment by way of the elimination of a position due to economic constraints has long constituted a legitimate, good cause reason under California law for an employee's termination."  Citing *Burton v. Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, the Association also argued that Foley's "own subjective belief, speculation and conjecture that the reason for her termination was a pretext for termination does not suffice as evidence to establish her claim."

4. *Fourth cause of action*:  *Breach of implied covenant of good faith and fair dealing*

Finally, with respect to the fourth cause of action for breach of the implied covenant of good faith and fair dealing, the Association argued that since this claim is based on the same allegations upon which Foley's fifth cause of action is based, her breach of the implied covenant claim fails as a matter of law because her claim for breach of implied contracts fails as a matter of law.

8

In support of their motion and separate statement of undisputed facts, the defendants lodged numerous excerpts from the transcripts of the deposition testimony given by Foley, Grimes, Stewart, and D'Souza, as well as related exhibits (including Stewart's allegedly libelous letter to Association homeowners dated October 6, 2009) and the declaration of defense counsel authenticating the various lodged exhibits.

C. *Foley's Opposition and Defendants' Reply*

Foley opposed the motion, arguing she had presented evidence demonstrating the existence of genuine issues of material fact and asserting defendants had "ignore[d]" portions of the transcripts of the deposition testimony given by Cockerham, Stewart, Messmer, Grimes, and D'Souza, as well as five letters circulated by two "dissenting" Board members and five letters from "angry" Association homeowners.

With respect to the first cause of action for slander, Foley argued the evidence showed that the individual defendants "made false and defamatory statements to [Association] homeowners about [her] compensation and work performance, casting her as an overpaid and incompetent employee." Specifically, Foley argued there were triable issues of material fact as to (1) whether Grimes had slandered her by spreading false rumors that her annual salary, which she asserted was only $67,000, was $96,000; and (2) whether he slandered her at the 2009 annual meeting of the Association homeowners by making false statements to the effect that she was overcompensated and could not find a job elsewhere, and by making false statements about her salary increases and bonuses. Among other things, Foley cited the deposition testimony of Cockerham, the doorman supervisor, that Grimes made statements to others that "senior staff," which Foley

9

indicated was a reference to her, "basically were overpaid and they wouldn't be able to find a job anywhere else in town at how much they were making."

Foley also argued that Grimes's statements were not privileged under Civil Code section 47 because "[a] prerequisite to this protection is that the statement not be made with malice," and Grimes's statements "were made with malice because he intentionally misrepresented Foley's salary increases, bonuses, and compensation package to enhance his position with the Board." Citing Cockerham's deposition testimony that Grimes told him after the 2009 annual meeting that Foley "has got another thing [*sic*] coming" if she thought she could complain about him, Foley argued a jury could infer malice from this statement, especially when combined with the evidence she claimed was set forth in Board member Ramin Samimi's letter to the homeowners showing that Grimes hired counsel to advise him how to orchestrate firing Foley without the knowledge or approval of the entire Board.

Relying on deposition testimony that she, Messmer, Stewart, and D'Souza had given, Foley also argued there was a triable issue of material fact as to whether Messmer had slandered her by making comments to other homeowners that there were reasons he could not discuss as to why Foley's employment had been terminated, thereby leading others to believe Foley had been terminated for cause. She also argued Messmer's statement was not privileged because he stated in his deposition that, as a Board member, he was not Foley's employer.

Pointing to Stewart's own deposition testimony, Foley argued that Stewart conceded he had slandered Foley and that Stewart could not avail himself of the privilege

10

under Civil Code section 47 because the October 6, 2009 letter he sent to homeowners after Foley's employment was terminated contained statements that Stewart made with malicious intent, and he could not claim he was Foley's employer.

With respect to the second cause of action for libel, Foley argued that Stewart's deposition testimony and his letter to homeowners show there was a triable issue of material fact as to whether the letter was libelous. She argued that Cockerham's deposition testimony showed that many homeowners received Stewart's letter and interpreted it to imply that she lacked the necessary job skills, and she was fired for cause, not for budgetary reasons. Foley repeated her previous argument that Stewart could not avail himself of the common interest privilege (Civ. Code, § 47).

With respect to the third cause of action for wrongful termination in violation of public policy based on Labor Code section 6310, Foley argued the evidence showed that two Board members, Ramin Samimi and Thom Sanders, publicly stated that Foley's employment was terminated in retaliation for complaining about Grimes's slanderous comments, the *Muller* case cited by defendants was inapposite because that case involved an employee frightened by a customer and Foley never claimed her working conditions were unsafe because she was "frightened," and the testimony given by the individual defendants and evidence of complaints by homeowners show her termination was not based on budgetary reasons because the Association "did not have any budget shortfalls."

Finally, with respect to both the fourth cause of action for breach of the implied covenant of good faith and fair dealing and the fifth cause of action for breach of an implied contract, Foley first argued she had presented evidence showing a triable issue of

11

material fact as to whether an implied-in-fact contract existed. Citing her own deposition testimony, she argued that D'Souza told her on three occasions that her job was safe and she was not going to be terminated. She also argued that D'Souza's testimony confirmed that he made those statements on at least one occasion after the April 2009 annual meeting, and Cockerham's testimony shows that D'Souza told Cockerham and Foley that their jobs were safe. Citing her own testimony, Foley argued it was undisputed she had worked for the Association for nearly 15 years, and, with the exception of one year, she had received a bonus and raise every year. Citing D'Souza's testimony, she also argued she had regularly received positive performance reviews. As to both claims, she argued that evidence she had already discussed showed the Association's decision to terminate her employment was made in retaliation for her complaints about Grimes's slanderous comments and that the stated budgetary reason for her discharge was "completely pretextual and false."

In support of her opposition and response to defendants' separate statement of undisputed facts, Foley lodged numerous excerpts from the transcripts of the deposition testimony given by herself, Grimes, Messmer, Stewart, D'Souza, and Cockerham, as well as various other exhibits, including Stewart's allegedly libelous letter to Association homeowners dated October 6, 2009, and letters written by Board members Ramin Samimi and Thom Sanders and homeowners Francie Sanders and Diana Brandenburg.

The defendants submitted their reply to Foley's opposition, essentially repeating the arguments they made in support of their motion.

12

D. *Court's Two Sets of Tentative Rulings and Judgment*

1. *First set of tentative rulings*

In mid-January 2011, the court issued its first set of tentative rulings granting summary judgment in favor of the Association and the individual defendants. Following the February 4, 2011 hearing on the motion and these tentative rulings, the court took the matter under submission and thereafter allowed the filing of supplemental briefing by both parties, as well as numerous sets of evidentiary objections submitted by the defendants.

2. *Second set of tentative rulings on which the judgment is based*

In late February 2011, after considering the parties' supplemental briefing, the court issued its second set of tentative rulings, again granting summary judgment in favor of the Association and the individual defendants.

a. *First cause of action*

With respect to the first cause of action for slander, the court found the individual defendants had met their burden of showing that all of the alleged defamatory statements were "encompassed within the [Civil Code] section 47[, subdivision (c)] qualified privilege" because it was "undisputed that all of the statements were transmitted between homeowners within the development during the course of heated debate regarding the elimination of Association employees for the stated purpose of reducing the Association's budget," and it was also undisputed that all of the homeowners were "interested" parties.

Noting that Grimes's statements about pay and bonuses "could be slanderous," the statement that Foley was "overpaid" constituted "non-actionable opinion." The court also

13

tentatively found that although the evidence demonstrated Grimes may have been "upset" after the annual meeting because Foley lodged a complaint through her attorney, "[t]his [was] not sufficient to evidence malice," and this fact was "immaterial" because "the statements were made before [Foley] complained, and in fact were the reason for her complaint."

Of particular importance to this appeal, citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 (*Aguilar*), the court then stated:

> "Two competing inferences can be formed from the evidence presented by [Foley]. First, [Grimes] believed the information was correct and as a result neglected to verify the information via review of Association records. Second, [Grimes] knew the information was wrong (or probably wrong), but made the statements in any event in order to garner support for [Foley's] termination. If a court determines that all of the evidence presented by the plaintiff, and all of the inferences drawn from that evidence show and imply wrongful conduct 'only as likely' as permissible conduct, it must grant the defendant's motion for summary judgment. [Citation.] Where competing and equal inferences exist[,] a reasonable trier of fact could not find for the plaintiff. [Citation.] *In this case the inferences are equally plausible such that* [*Foley*] *has not met her burden of demonstrating malice*." (Italics added.)

Stating also that the supplemental evidence presented by Foley "does not compel a different result," the court found that "[s]peculation by other homeowners does not constitute evidence of malice." Noting that the extent to which Grimes "prearranged" Foley's termination was disputed, the court found "this does not evidence malice," and whether the September 25, 2009 meeting was properly closed to Association members was "immaterial" because "[t]his is not an action by a homeowner seeking to rescind the

14

vote or alleging a breach of fiduciary duty" and "[w]hether [Grimes] was emotional and angry at the meeting says nothing about his true motives."

Regarding Foley's slander claim against Messmer, the court found his statement about his inability to discuss the reason for Foley's termination was ambiguous and susceptible to more than one meaning and, although there was "some evidence" that his statement was interpreted by listeners as derogatory in nature, "no special damages ha[d] been alleged or evidenced: his statement was made after [Foley's] termination." Referring to Foley's "supplemental submission of evidence," the court stated that "[t]he homeowners are not competent to provide statements as to [her] inability to secure future employment"; she "[did] not submit her own declaration to this effect"; and "in fact, the declarations submitted by [Foley] tend to establish that many of the homeowners would have provided positive references for [her]." The court also found Foley's claim against Messmer failed "based on the [Civil Code] section 47[, subdivision (c)] qualified privilege," and because Foley "fail[ed] to present evidence indicating [Messmer] harbored malice toward her."

Regarding Foley's slander claim against Stewart, the court found that Stewart's allegedly defamatory statement that Foley was not at work for six weeks out of each year was made after she was terminated, and the statement was not defamatory on its face. Noting that Foley's "supplemental evidence" provided "some evidence" that Stewart's statement was interpreted by listeners as derogatory in nature, the court found that "no special damages ha[d] been alleged or evidenced: his statement was made after [Foley's] termination." The court again found that Foley's supplemental evidence "[did] not

15

establish special damages" because "[t]he homeowners are not competent to provide statements as to [her] inability to secure future employment"; Foley "[did] not submit her own declaration to this effect," and "in fact, the declarations submitted by [Foley] tend to establish that many of the homeowners would have provided positive references for [her]."

b. *Second cause of action*

With respect to the second cause of action against Stewart for libel, the court found that "[m]ost, if not all" of the statements in Stewart's October 6, 2009 letter were nonactionable opinion, and the statements were not defamatory per se as Stewart "[did] not state that [Foley was] was incompetent," but rather "implie[d] that she [was] overpaid for her position" and she "[did] not possess the ideal skill set."  The court again found "there [was] no evidence of special damages given that this letter was transmitted <u>after</u> [Foley] was terminated," and "[t]here is also no evidence that these statements were understood by those to whom the letter was published in a derogatory manner."  The court further found that Foley's claim failed "based on the [Civil Code] section 47[, subdivision (c)] qualified privilege" and because Foley "fail[ed] to present any evidence indicating malice," noting that "failing to verify this information is not malicious."

c. *Third cause of action*

With respect to the third cause of action against the Association for wrongful termination in violation of public policy based on Labor Code section 6310, the court found this claim failed because (1) as it already found, "defamation did not occur . . . such that no unsafe work environment could have been created"; and (2) the

16

alleged defamatory statements "do not create 'unsafe working conditions' or constitute unsafe 'work practices.'" The court noted that this case was analogous to *Muller*, *supra*, 61 Cal.App.4th 431. The court also observed that Grimes "did not threaten [Foley] with physical harm or subject her to emotional abuse or harassment."

d. *Fourth and fifth causes of action*

With respect to the two remaining causes of action against the Association only—the fourth cause of action for breach of the implied covenant of good faith and fair dealing, and the fifth cause of action for breach of an implied contract—the court first found that, assuming the existence of an implied contract under which Foley could not be terminated except for good cause, General Manager D'Souza's testimony "establishe[d] this good cause." The court stated:

> "General Manager D'Souza testified that he provided the Board with three budget reduction alternatives in September, 2009. One of these alternatives was to create a resident service manager position, which would eliminate the security supervisor position and combine the concierge position into the new position. Board member Sandy Brue made the motion to accept this alternative. [Grimes] seconded the motion. The Board minutes demonstrate that the motion passed by a vote of three to two. Brue, Grime, and Messmer voted in the majority. Mr. D'Souza also states that the idea to combine positions was his, and that he is 'sure' he presented a similar proposal the year before."

The court also stated that Foley's position "was eliminated and folded into a new position for budgetary reasons," and the deposition testimony given by Messmer and Stewart about the state of the Association's current budget "[did] not help [Foley]" because "[g]ood cause could exist based in present or future budget concerns." The court found the letters and e-mail Foley referenced were inadmissible hearsay, and, "in any

17

event, the opinions of the homeowners are not relevant" because, "[a]lthough many of the homeowners may not like the decision, this does not mean the decision was made in bad faith," and "there [was] no foundation for their theories as to Grimes'[s] true motives."

The court further found that breach of an implied contract "cannot be established" because, assuming Cockerham's deposition testimony "establishe[d] that Grimes had an ulterior motive for [Foley's] termination after receiving the letter from [her] counsel, the element of causation [was] missing." The court stated "[i]t is undisputed that Grimes was advocating for the elimination of the concierge position at the April 19, 2009 homeowners' meeting," which "occurred prior to the letter (and was the reason for the letter)." "More importantly," the court stated, "Grimes'[s] vote to eliminate the position was meaningless in the absence of a majority vote to eliminate the position," and "there [was] no evidence that Grimes'[s] motive to retaliate against [Foley] translated into hi[s] influencing the other board members to vote in favor of eliminating the position."

The court also found that Foley's supplemental evidence "does not save" her fourth and fifth causes of action because "the opinions of homeowners as to the state of the budget are immaterial," "there continues to be a lack of evidence of causation," and "[t]here is no direct or circumstantial evidence demonstrating that Grimes' vote was based on an ulterior motive, or that he influenced the votes of the other board members as a result of this ulterior motive."

3. *Judgment*

Following the March 4, 2011 hearing on defendants' motion and the court's second set of tentative rulings, the court took the matter under submission. The court thereafter

18

confirmed those tentative rulings, entered an order granting defendants' motion, and denied Foley's motion for reconsideration.

On June 17, 2011, the court entered judgment in favor of the defendants. Foley's timely appeal followed.

DISCUSSION

I. *GENERAL LEGAL PRINCIPLES AND STANDARD OF REVIEW*

"A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment." (Code Civ. Proc., § 437c, subd. (f)(2).) In reviewing an order granting or denying a motion for summary adjudication, we apply the same standards as we would apply in reviewing a trial court's order granting or denying a motion for summary judgment. (See Code Civ. Proc., § 437c, subds. (c) & (f); *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

On an appeal from a grant of summary judgment (or summary adjudication), we independently examine the record, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained, to determine whether a triable issue of material fact exists. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*); *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 385.) We review the trial court's ruling, not the court's reasoning. (*Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1485.) In performing our de novo review, we view the evidence in a light favorable to the losing

19

party (here, Foley), liberally construing her evidentiary submission while strictly scrutinizing the prevailing party's (here, defendants') own showing, and resolving any evidentiary doubts or ambiguities in favor of the losing party. (*Saelzler*, *supra*, at pp. 768-769.)

In *Aguilar*, *supra*, 25 Cal.4th 826, the California Supreme Court clarified the legal principles and standards that apply to summary judgment proceedings under Code of Civil Procedure section 437c. "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, at p. 850, fn. omitted.) A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Ibid*.; § 437c, subds. (o)(2).) In such a case, the moving defendant "bears [the] initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, at p. 850.)

If the moving defendant meets this burden of production, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid*., fn. omitted.)

*Aguilar* further explained that a court "may not 'grant[]' the defendants' motion for summary judgment 'based on inferences . . . , if contradicted by other inferences or

20

evidence, *which raise a triable issue as to any material fact*.'" (*Aguilar*, *supra*, 25 Cal.4th at p. 856, quoting Code Civ. Proc., § 437c, subd. (c), fn. omitted, italics added.) In addition, "even though the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, it must nevertheless determine what any evidence or inference could show or imply to a reasonable trier of fact. . . . In so doing, *it does not decide on any finding of its own*, but simply decides what finding such a trier of fact could make for itself." (*Aguilar*, at p. 856, italics added.)

*Aguilar* also explained, however, that, "if the court determines that all of the evidence presented by the plaintiff, and all of the inferences drawn therefrom, show and imply [the ultimate fact] *only as likely as* [not] *or even less likely*, it must then grant the defendants' motion for summary judgment, even apart from any evidence presented by the defendants or any inferences drawn therefrom, because *a reasonable trier of fact could not find for the plaintiff*. Under such circumstances, the [factual] issue is not triable—that is, it may not be submitted to a trier of fact for determination in favor of either the plaintiff or the defendants, but must be taken from the trier of fact and resolved by the court itself in the defendants' favor and against the plaintiff." (*Aguilar, supra,* 25 Cal.4th at pp. 856-857, fn. omitted, italics added.)

## II. *ANALYSIS*

### A. *Slander and Libel*

Foley first contends the court erred in granting summary judgment in favor of the individual defendants (Grimes, Messmer, and Stewart) because—with respect to her first and second causes of action for slander per se and libel, respectively—the evidence

21

demonstrates their statements are provably false, and issues of material fact exist as to malice. We affirm the grant of summary judgment in favor of the individual defendants.

1. *Applicable legal principles*

a. *Defamation*

"Defamation is effected either by libel or slander." (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1368 (*Noel*), citing Civ. Code, § 44.) As pertinent here, slander is statutorily defined as a "false and unprivileged" oral communication that "[t]ends directly to injure [a person] in respect to his [or her] office, profession, trade or business . . . ." (Civ. Code, § 46, subd. (3); see *Noel*, at p. 1368.) Libel is defined as a "false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him [or her] to be shunned or avoided, or which has a tendency to injure him in his [or her] occupation." (Civ. Code, § 45.)

In *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97 (*McGarry*), this court explained that defamatory statements that "contain[] such a charge directly, and without the need for explanatory matter, are libelous per se." (*Id*. at p. 112, citing Civ. Code, § 45a.[3]) We further explained that "[a] statement can also be libelous per se if it contains a charge by implication from the language employed by the speaker and a listener could understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter. [Citation.] However, if the listener would not recognize the

---

[3] Civil Code section 45a provides: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. . . ."

22

defamatory meaning without 'knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons' [citation], the matter is deemed defamatory per quod and requires pleading and proof of special damages." (*McGarry*, at p. 112; see Civ. Code, § 45a [providing in part: "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."].)

We further explained in *McGarry* that "'[t]he sine qua non of recovery for defamation . . . is the existence of falsehood.' [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." (*McGarry*, *supra*, 154 Cal.App.4th at p. 112; accord, *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 695-696 (*Summit Bank*).) "To determine whether a statement is actionable fact or nonactionable opinion, we apply a totality of the circumstances test pursuant to which we consider both the language of the statement itself and the context in which it is made." (*Summit Bank*, at p. 696, citing *McGarry*, supra, at p. 113.)

b. *Conditional common-interest privilege*

In *Noel, supra,* 113 Cal.App.4th 1363, this court explained that Civil Code section 47, subdivision (c) (hereafter Civil Code section 47(c))[4] "extends a conditional privilege

---

4      Civil Code section 47(c) provides in part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) In a communication, without malice, to a person interested

23

against defamatory statements made without malice on subjects of mutual interest." (*Noel*, at p. 1368, citing *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1205.) "If the privilege arises, it is a complete defense." (*Noel*, at p. 1369.)

We also explained in *Noel* that the courts in California "have consistently interpreted [Civil Code] section 47[(c)] to apply in the employment context." (*Noel, supra*, 13 Cal.App.4th at p. 1369.) Also, "[i]nsofar as the common-interest privilege is concerned, malice is not inferred from the communication itself." (*Id.* at p. 1370, citing Civ. Code, § 48.[5]) Furthermore, "'"[t]he malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights (citations).'"'" (*Noel*, at p. 1370.)

c. *Analysis*

i. *Grimes*

Turning first to Foley's first cause of action for slander per se, which asserts her sole claim against Grimes, we affirm the court's grant of summary judgment in his favor.

---

therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. . . . This subdivision authorizes a current . . . employer, or the employer's agent, to answer whether or not the employer would rehire a current . . . employee."

5    Civil Code section 48 provides: "In the case provided for in subdivision (c) of Section 47, malice is not inferred from the communication."

24

In her complaint Foley alleged that Grimes, as a member of the Board, slandered her at the April 2009 annual meeting of the Association's homeowners by falsely stating she was overpaid and the reason she did not leave was that she could not find a job elsewhere. She also alleged Grimes made additional slanderous comments at other Association meetings that injured her in her occupation, by falsely stating that she was earning a base annual salary of $96,000 when she was earning significantly less than that amount, and that she had received a 10 percent bonus, and that Grimes made these false statements to cause homeowners to believe she was overpaid and to demand her resignation.

As shown by Foley's supplemental response to the defendants' joint separate statement of undisputed facts, it is undisputed that Grimes acted in his capacity as both an Association homeowner and a member of the Board. When asked during her deposition to identify the defamatory statements she was alleging Grimes made, Foley testified to Grimes's statements at the April 2009 annual meeting of the Association's homeowners. Specifically, she testified that Grimes mentioned her name and said in front of 100 homeowners that "senior staff" were "overpaid," they all got bonuses that were 10 percent of their salaries, they could not get paid elsewhere what the Association was paying them, and "that's why they don't leave."

As the court properly found, Grimes's alleged statement that Foley was overpaid is a statement of opinion that is not actionable. (See *McGarry*, *supra*, 154 Cal.App.4th at p. 112; *Summit Bank*, *supra*, 206 Cal.App.4th at p. 696.) The same is arguably true about

25

the alleged statements that senior staff could not get paid elsewhere what the Association was paying them, and "that's why they don't leave."

Assuming these alleged statements were statements of fact, all of Grimes's allegedly defamatory statements fall within the purview of the conditional common-interest privilege under Civil Code section 47(c), as the court also properly found, because (1) it is undisputed the statements were made during a discussion about the Association's budget at the Association's 2009 annual meeting by Grimes who, as an Association homeowner and Board member, had an interest in that discussion, to a large body of similarly interested Association homeowners and staff members; and (2) Foley has failed to show a triable issue of fact as to whether Grimes acted with malice when he made those statements. With respect to the issue of malice, none of Grimes's alleged statements can be used to show the existence of a triable issue of fact as to whether Grimes harbored malice when he spoke. (See *Noel*, *supra*, 113 Cal.App.4th at p. 1370 ["Insofar as the common-interest privilege is concerned, malice is not inferred from the communication itself."]; Civ. Code § 48, see fn. 5, *ante*.) In addition, Foley's evidence that Grimes may have been upset or angry with her because she lodged a complaint through her attorney about Grimes's statements is insufficient to show such a triable issue of fact because those statements were made before Foley lodged her complaint. Furthermore, as the defendants point out, the Association was statutorily mandated under Civil Code section 1365.2, subdivision (d)(2) to provide its members with information about the compensation it was paying to its employees. That subdivision provides in part that, "[e]xcept as provided by the attorney-client privilege, the association may not

26

withhold or redact information concerning the compensation paid to employees, vendors, or contractors."[6]

Furthermore, in granting summary judgment in favor of Grimes, the court found with respect to the issue of malice that two "competing inferences" could be drawn from Foley's evidence: (1) Grimes believed the information he communicated about Foley's compensation was correct, but he neglected to verify the information through a review of the Association's records; and (2) Grimes knew the information was either wrong or probably wrong, but made the statements for the purpose of garnering support for Foley's termination. Citing *Aguilar*, *supra*, 25 Cal.4th 826, the court found these inferences were "equally plausible such that [Foley] has not met her burden of demonstrating malice." We agree. As already discussed, *Aguilar* explained that, if the court determines that all of the evidence presented by the plaintiff, and all of the inferences drawn therefrom, show that some material fact is "only as likely as [not]," it must grant the defendants' motion for summary judgment because "a reasonable trier of fact could not find for the plaintiff"; and, thus, "the [factual] issue is not triable" and "must be taken from the trier of fact and resolved by the court itself in the defendants' favor and against the plaintiff." (*Id*. at pp. 856-857, fn. omitted.)

Here, after reviewing Foley's voluminous evidence in opposition to the defendants' motion, we agree with the court's finding that the evidence she has presented, and the

---

6     Although Civil Code section 1365.2, subdivision (d)(2) also provides that "[c]ompensation information for individual employees shall be set forth by job classification or title, not by the employee's name, social security number, or other personal information," Foley's complaint does not allege a violation of that subdivision.

reasonable inferences to be drawn therefrom, show that it is "only as likely as [not]" that Grimes acted with malice. We thus conclude Foley has failed to show a triable issue of material fact with respect to her first cause of action for slander against Grimes. Accordingly, we affirm the court's grant of summary judgment in his favor.

ii. *Messmer*

Turning again to Foley's first cause of action for slander per se, which also asserts her sole claim against Messmer, we affirm the court's grant of summary judgment in his favor. As previously noted, Foley's complaint alleged that Messmer slandered her by (1) "repeat[ing] Grimes's comments about [her]," and (2) "[a]fter [she] was fired, . . . mak[ing] comments to other homeowners that there were reasons he could not discuss as to why [her] employment was terminated, thus leading others to believe [she] was terminated for cause," when in fact she had not been terminated for cause. In support of their summary judgment motion, defendants presented Foley's deposition testimony that, *after* her employment was terminated, someone—"possibly" Association homeowners Francie Sanders or Deb Senkier—told her that during a Board meeting, Messmer "implied to people that I was let go for cause," and he did so by "impl[ying] to everybody in that room that there were reasons that he could not discuss . . . why [she] was terminated." In opposition to the motion, Foley presented Messmer's deposition testimony conceding he told some Association homeowners that the termination of Foley's position was for consolidation purposes, but told other homeowners there were reasons he could not discuss as to why her position was terminated. Foley also submitted Stewart's testimony that he heard Messmer tell other homeowners there were reasons

28

Messmer could not discuss as to why Foley's position was terminated; Senkier's declaration testimony that she was present at the Association's homeowners meeting when Messmer made his statements about Foley, and she believed Messmer's comments interfered with Foley's job search for new employment; Francie Sanders's declaration testimony that she was also present at the Association homeowners meeting when Messmer made his comments about Foley, she understood Messmer's comments as being derogatory in nature and implying that Foley had been fired for cause; plus other evidence Foley claimed would show Messmer acted with malice because (among other things) he had participated as a Board member in the decision to fire Foley, and he did not search for any documents.

Messmer's allegedly defamatory statement was ambiguous at best, and, thus, was not defamatory on its face. Even though it is undisputed Messmer made the alleged statement *after* the Association terminated Foley's employment, we shall assume, without deciding, that Foley met her burden of presenting evidence of both special damages and inducement.

We conclude Messmer's allegedly defamatory statement, like Grimes's alleged statements, falls within the purview of the conditional common-interest privilege under Civil Code section 47(c), as the court also properly found, because (1) the statement was made by an Association homeowner and Board member—Messmer, who had an interest in the Association's budgetary matters, including the consolidation of employment positions and Foley's discharge—to other similarly interested Association homeowners and Board members; and (2) Foley has failed to show a triable issue of fact as to whether

29

Messmer acted with malice when he made those statements. Messmer argues "the mere fact that he would not discuss Foley's termination does not establish malice." We agree. Messmer's allegedly defamatory statements cannot be used to show the existence of a triable issue of fact as to whether he harbored malice when he spoke. (See *Noel*, *supra*, 113 Cal.App.4th at p. 1370; Civ. Code § 48, see fn. 5, *ante*.) In support of her contention there is a triable issue of fact as to malice, Foley cites homeowner Senkier's declaration testimony that Messmer spoke in an "angry manner" when he made his comment, However, as the court properly found, "[w]hether [a] defendant shouts or loses his temper at association meetings is immaterial on the issue of malice."

We thus conclude Foley has failed to show a triable issue of material fact with respect to her first cause of action for slander against Messmer. Accordingly, we affirm the court's grant of summary judgment in his favor.

iii. *Stewart*

We next conclude, for similar reasons, that Foley has failed to show a triable issue of material fact with respect to her two defamation claims against Stewart: slander per se (first cause of action) and libel (second cause of action).

In support of the slander claim, as previously noted, Foley's complaint alleged that Stewart, like Messmer, slandered her by "repeat[ing] Grimes's comments about [her]." The complaint also alleged Stewart slandered her by stating she "wasn't even at work six weeks a year." In support of her libel claim, Foley's complaint alleged that, after her employment was terminated, Stewart sent to other homeowners a letter stating that Foley's position "required duties and talents beyond those that our previous concierge

30

[Foley] demonstrated,"and that those statements "led others to believe [she] did not have the job skills necessary to perform her job and that she had been terminated for cause."

In opposition to Stewart's summary judgment motion, Foley presented in support of her slander claim Stewart's deposition testimony that after the Association terminated Foley's employment on September 24, 2009, he told Association homeowners during a conversation about Foley's termination as an Association employee, that she was not at work six weeks every year, and that Stewart did not do anything to verify whether Foley had six weeks off every year. She also presented D'Souza's deposition testimony that Foley had three weeks of vacation every year. The transcript of Stewart's deposition shows he also testified that, when he made the statement in question, he "was stating what [he] thought at the time was a fact" he had heard from homeowners.

In support of her libel claim, Foley submitted Stewart's letter, which is dated October 6, 2009, and is addressed to "all [Association] Homeowners." On its face, the letter shows Foley has selectively quoted only a portion of the paragraph in which the allegedly libelous statement appears. That paragraph states in full:

> "The position requires duties and talents beyond those our previous concierge demonstrated. *For example, it would be beneficial if they were experienced in the creating and editing of a periodic newsletter and the monitoring of our website. Our web site needs to be updated, user friendly, meaningful, and of value to homeowners or it will never be utilized.*" (Italics added.)

Foley also submitted Stewart's testimony that he had not asked about Foley's job responsibilities, was unfamiliar with her background and experience, and had no personal knowledge about her salary as the Association's concierge. She also presented

31

Association homeowner Senkier's declaration testimony that Senkier received a copy of Stewart's letter. She believed it was derogatory in nature and implied Foley had been fired for cause and she believed Messmer's comments interfered with Foley's job search for new employment. Foley also submitted Association homeowner Francie Sanders's declaration testimony that Sanders also received a copy of Stewart's letter and she believed it implied Foley had been fired for cause.

Stewart's allegedly slanderous statement that Foley was not at work six weeks every year and his written comment that "[t]he position requires duties and talents beyond those our previous concierge demonstrated" were ambiguous and, thus, not defamatory on its face.

We conclude Stewart's written comment on its face shows it is a statement of opinion that is not actionable. To the extent the evidence show Stewart repeated Grimes's statement that Foley was overpaid, that statement is also a statement of opinion that is not actionable. Also, as it is undisputed Stewart published his letter *after* the Association terminated Foley's employment and the supplemental declarations of the homeowners regarding alleged interference with Foley's job search are conclusory and speculative at best, Foley has failed to present evidence showing a triable issue of fact as to whether she suffered special damages.

Even if we were to assume Foley met her burden of presenting evidence of both special damages and inducement, we conclude all of Stewart's statements fall within the purview of the conditional common-interest privilege under Civil Code section 47(c) because (1) the statements were made by an Association homeowner—Stewart, who had

an interest in the Association's budgetary matters, including the consolidation of employment positions and Foley's discharge—to other similarly interested Association homeowners; and (2) Foley has failed to show a triable issue of fact as to whether Stewart acted with malice when he made those statements. We thus conclude Foley has failed to show a triable issue of material fact with respect to her slander and libel causes of action against Stewart. Accordingly, we affirm the court's grant of summary judgment in his favor.

B. *Wrongful Termination in Violation of Public Policy*

Foley also contends the court erred in granting summary judgment in favor of the Association because, with respect to her third cause of action against the Association for wrongful termination in violation of public policy, issues of material fact exist as to whether retaliation was the true reason for the termination of her employment, and thus whether the Association's proffered budgetary reason was a mere pretext. This contention is unavailing.

"'[W]hile an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.'" (*Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1104 (*Silo*), quoting *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1094 (*Gantt*), overruled on another point in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6.) Typically, the tort of wrongful termination in violation of public policy arises in circumstances where the employer retaliates against an employee who (1) refused to violate a statute, (2) performed a statutory obligation, (3) exercised a statutory

33

right or privilege or (4) *reported an alleged violation of a statute of public importance*. (*Gantt*, at pp. 1090-1091.) "[T]his public policy exception to the at-will employment rule must be based on policies 'carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions . . . .'" (*Silo*, *supra*, at p. 1104, quoting *Gantt*, at p. 1095.)

Here, in seeking reversal of the portion of the judgment summarily adjudicating the third cause of action in favor of the Association, Foley contends her discharge violated the public policy delineated in Labor Code section 6310 (hereafter section 6310), which (she asserts) "prohibits employers from subjecting employees to unsafe and unhealthy working conditions," and "protects [her] from being fired for complaining about Grimes's slanderous remarks."

Labor Code section 6310, subdivision (b) (hereafter Labor Code section 6310(b)) of the California Occupational Safety and Health Act (Cal-OSHA) provides:

> "Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to . . . his or her employer . . . of *unsafe working conditions, or work practices*, . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." (Italics added; see also *Daly v. Exxon Corp.* (1997) 55 Cal.App.4th 39, 43 (*Daly*).)

Labor Code section 6310(b) "permits an action for damages if the employee is discharged, threatened with discharge, or discriminated against by his or her employer because of the employee's complaints about *unsafe work conditions*." (*Daly*, *supra*, 55 Cal.App.4th at p. 43, italics added.) As this court explained in *Muller*, *supra*, 61

34

Cal.App.4th 431, on which the court relied in granting summary judgment in favor of the Association, Labor Code section 6310(b) delineates a public policy that "promot[es] safety in the workplace and prohibit[s] employers from retaliating against employees who complain of unsafe working conditions." (*Muller*, at p. 450.)

We conclude the Association has met its burden of demonstrating there is no merit to Foley's claim that the Association violated the public policy delineated in Labor Code section 6310(b) by discharging her in retaliation for her complaint about Grimes's allegedly slanderous remarks at the Association's April 2009 annual meeting because there is no evidence in the record that Foley was subjected to "unsafe working conditions [or] work practices" within the meaning of Labor Code section 6310(b). Foley cites no persuasive authority, and we are aware of none, that the making of alleged defamatory statements in the workplace constitutes an "unsafe" working condition or work practice within the purview of that section.

The *Daly* case illustrates the kind of unsafe working condition or work practice that will support a cause of action for wrongful termination in violation of public policy under Labor Code section 6310(b). There, the plaintiff employee complained about Cal-OSHA violations and told her supervisors that a subcontractor was not providing for the safety of its employees. (*Daly*, *supra*, 55 Cal.App.4th at p. 42.) After the subcontractor asked the plaintiff's employer to terminate her employment, the employer did not renew her employment contract, and the plaintiff sued her employer for wrongful termination in violation of public policy. (*Ibid*.) Reversing the judgment of dismissal entered after the trial court sustained the employer's demurrer without leave to amend, the *Daly* court

35

concluded that "the complaint can be amended to state a cause of action under [Labor Code] section 6310[(b)]," stating that "an employee in [plaintiff's] situation should not be singled out for disparate treatment because of [her] complaints about unsafe work conditions." (*Daly*, at. p. 44.)

This court's decision in *Muller*, *supra*, 61 Cal.App.4th 431, illustrates the type of working condition that will not support a cause of action for wrongful termination in violation of public policy under Labor Code section 6310(b). There, the plaintiff—an insurance claims adjuster who received a series of angry and threatening telephone calls at work from a customer's son who berated and shouted obscenities at her, became frightened, and was discharged after she communicated to her employer specific security measures she wanted her employer to implement to accommodate her fear for her safety in the workplace. (*Id*. at pp. 436-437.) The plaintiff brought a claim against her employer for wrongful termination in violation of public policy, and the trial court granted summary judgment in favor of the employer. (*Id*. at p. 435.) This court affirmed, concluding that "[t]he voicing of a fear about one's safety in the workplace does not necessarily constitute a complaint about unsafe working conditions under [Labor Code section 6310(b)]." (*Id.* at pp. 451-452.)

Here, the Association persuasively argues that the allegedly defamatory comments that Grimes, Messmer, and Stewart made "do not provide the basis for an unsafe workplace or other 'safety' violation[] as contemplated by [Labor Code] section 6310[(b)]"; and that "[t]his is especially true of [Messmer] and [Stewart] since their alleged comments occurred after Foley's termination." We conclude the making of

36

defamatory statements in the workplace does not constitute an "unsafe" working condition or work practice within the purview of Labor Code section 6310(b) of Cal-OSHA. Thus, we also conclude Foley's evidence that Grimes, Messmer, and Stewart made allegedly defamatory statements about her during and after the 2009 annual meeting is not evidence that her workplace was actually unsafe within the meaning of Labor Code section 6310(b). Accordingly, as Foley has failed to show a triable issue of fact as to whether the Association terminated her employment for complaining about unsafe working conditions in violation of Labor Code section 6310(b), we affirm the portion of the judgment summarily adjudicating Foley's third cause of action in favor of the Association.

C. *Breach of Implied Contract and the Implied Covenant of Good Faith and Fair Dealing*

Last, Foley contends the court erred in granting summary judgment in favor of the Association because, with respect to her claims for breach of implied contract (fifth cause of action) and breach of the implied covenant of good faith and fair dealing (fourth cause of action) which are based upon the same factual allegations, the evidence establishes the existence of an implied contract, and issues of material fact exist as to whether the Association acted in bad faith by retaliating against her. We conclude these contentions are unavailing.

1. *Applicable legal principles*

"An employment, having no specified term, may be terminated at the will of either party on notice to the other." (Lab. Code, § 2922.) At-will employment may be

terminated by either party at any time without cause, for any or no reason, and it is not subject to any specified procedure except the statutory requirement of notice. (*Guz, supra,* 24 Cal.4th at p. 335.) Where the parties have made "no express oral or written agreement specifying the length of employment or the grounds for termination," there is a statutory presumption that the employment was at will in nature. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 677; Lab. Code, § 2922; see also *Haycock v. Hughes Aircraft Co.* (1994) 22 Cal.App.4th 1473, 1488.)

This presumption of at-will employment may be rebutted if one party can show the parties expressly or implicitly agreed to depart from the at-will status. (*Tomlinson v. Qualcomm, Inc.* (2002) 97 Cal.App.4th 934, 943.) An implied-in-fact agreement of this type arises from the parties' conduct evidencing an actual mutual intent to create such a contractual agreement, that is, not to terminate except for good cause. (*Guz, supra,* 24 Cal.4th at p. 336.) "'[T]he totality of the circumstances' must be examined to determine whether the parties' conduct, considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract limiting the employer's termination rights." (*Id.* at p. 337.) The courts take into consideration the entire relationship of the parties, which includes the following factors, as relevant here: an employee manual; online, accessible personnel policies and practices; longevity of service; any employer-sanctioned assurances of continued employment; and communications from or conduct of the employer approving of the employee's work, such as promotions, raises, bonuses, or positive performance reviews. (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 680; *Haycock v. Hughes Aircraft Co., supra,* 22 Cal.App.4th at p. 1488.) Longevity of

38

service alone, even with evidence of employer approval of the employee's work, does not suffice to form an implied-in-fact contract because those circumstances may be consistent with at-will employment. (*Guz, supra,* 24 Cal.4th at pp. 341-342.) "The issue is whether the employer's words or conduct, on which an employee reasonably relied, gave rise to that specific understanding." (*Id.* at p. 342, italics omitted.)

2. *Analysis*

In its motion for summary judgment, the Association argued with respect to the fifth cause of action that even if the alleged implied contract were assumed to exist, Foley could not meet her burden of showing the Association's termination of her employment was "wrongful" because the Association "ha[d] articulated a valid, good cause reason for [her] termination," and "[t]he termination of employment by way of the elimination of a position due to economic constraints has long constituted a legitimate, good cause reason under California law for an employee's termination."

Foley's deposition testimony shows it is undisputed she did not have a written employment contract during the time the Association employed her. In support of her claim that she and the Association had entered into an implied-in-fact agreement that she could not be terminated except for good cause, Foley relies on her deposition testimony showing she had worked for the Association for nearly 15 years; with the exception of one year, she had received a bonus and raise every year; and D'Souza assured her on three occasions that her job was safe. Citing D'Souza's deposition testimony, she also asserts D'Souza "confirmed that at least one of those verbal assurances that took place

39

after the April 16, 2009 annual meeting." She also maintains that Cockerham's deposition testimony confirmed her own deposition testimony.

We assume, without deciding, that Foley has met her burden of showing the existence of a triable issue fact as to whether she and the Association had entered into an implied-in-fact agreement that she could not terminated except for good cause.

We conclude the Association has met its burden of showing it had good cause to terminate Foley's employment, and Foley has not met her burden of showing a triable issue of fact as to whether the Association breached either the assumed implied-in-fact agreement or the implied covenant of implied covenant of good faith and fair dealing by retaliating against her for complaining about Grimes's comments at the April 2009 annual meeting. It is undisputed that the minutes of the Board's September 24, 2009 executive session establish that the five Board members present at that meeting were Grimes, Messmer, Sandy Brue, Ramin Samimi, and Thom Sanders. It also establishes that, during that session, the members of the Board and General Manager D'Souza, who was also present, discussed "in detail" the Association's "[s]taffing levels for the draft 2010 budget," as well as "options that were presented by [D'Souza] to reorganize existing staff as a possible alternative for [the] FY-2010 Operating Budget." The minutes further establish that Grimes, Messmer and Brue voted to approve a "[m]otion to reorganize the staffing at the [Association] to eliminate the Concierge and Security Supervisor position and create a new position to provide resident services job scope," and Sanders and Samimi voted in opposition to the motion.

40

D'Souza's deposition testimony establishes good cause for the termination of Foley employment as the concierge because, as the court found, it establishes "[her] position was eliminated and folded into a new position for budgetary reasons." As the Association argued to the court in support of its motion, D'Souza testified that he had discussed eliminating Foley's position a year before the Board's September 24, 2009 executive session as part of previous budget discussions. Specifically, Foley's attorney asked D'Souza, "When was the idea to eliminate [Foley's] position—when did that idea first come about?" D'Souza replied, "It could have been even a year prior to that, you know." The following exchange then occurred:

> "[Foley's counsel]: So this was a discussion that you personally had with the board of directors?
>
> "[D'Souza]: If I were to go back to previous budget discussions, I'm sure there was a similar proposal in the previous years' discussion on ideas. That—that combining of positions and efficiencies for the [Association] is part of my responsibility during the budgeting process. So that idea could have come up, but [was] not presented, or it could have been presented in the previous budget discussions.
>
> "[Foley's counsel]: And whose idea was it?
> "[D'Souza]: That's mine."

In response, Foley submitted evidence showing (among other things) that Board members Samimi and Sanders questioned the decision to eliminate the concierge position, and Sanders circulated a letter stating he was resigning and Grimes had an "agenda" that was not in the best interests of the Association. Foley also submitted the deposition testimony of Samimi that a discussion of budgetary issues was to be open to all homeowners, and, thus, a reasonable jury could infer that the decision to terminate her

41

position could not have been for budgetary reasons since the September 2009 executive session was not open to Association members.

We agree with the court's finding that, even if Cockerham's testimony—that Grimes said Foley "had another thing [*sic*] coming" if she thought she could complain about him or try to sue him—establishes that Grimes had an ulterior motive for the termination of her position after he received the letter from Foley's counsel, the element of causation is "missing" because it is undisputed Grimes was advocating for the elimination of the concierge position *before* he received the letter from Foley's counsel, and (as shown by the minutes of the September 2009 executive session) Grimes's vote was only one of three that approved the motion to reorganize the Association's staffing to eliminate the concierge and security supervisor position and create a new position.

For all of the foregoing reasons, we conclude Foley's contention that issues of material fact exist as to whether the Association acted in bad faith by retaliating against her, is unavailing. Accordingly, we affirm the court's grant of summary judgment in favor of the Association.

DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.